# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>v.<br><br>ERIBERTO GONZALEZ,<br><br>                         Defendant. | Case No. 13-CR-101-JPS<br><br>**ORDER** |

## 1.    INTRODUCTION

On April 27, 2020, Defendant Eriberto Gonzalez filed a motion for compassionate release due to the current COVID-19 pandemic and his underlying health issues. (Docket #47). On June 5, 2020, the Court referred Defendant's motion to the Federal Defender Services of Wisconsin, Inc. ("FDS"). (Docket #48). On June 10, 2020, FDS indicated that it would be filing a supplement on Defendant's behalf. (Docket #50). On July 13, 2020, Defendant filed an unopposed motion for compassionate release. (Docket #53).

Upon consideration of the parties' submissions, the Court has determined that, as required under 18 U.S.C. § 3582(c)(1)(A), Defendant has exhausted the administrative requirements necessary. Further, the Court has determined that Defendant does meet the requirements for compassionate release. Therefore, Defendant's unopposed motion for compassionate release shall be granted. The Court will modify Defendant's term of imprisonment to time served and order that Defendant begin his term of supervised release as stated in Judge Rudolph Randa's Judgment.

(Docket #22). Further, Defendant's first motion for compassionate release (Docket #47) will be denied as moot, as will FDS's motion for an extension of time to file a supplemental brief (Docket #52).

## 2. RELEVANT FACTS

On May 17, 2013, Defendant was indicted on one count of possession with intent to distribute a controlled substance while on pretrial release. (Docket #7). On October 9, 2013, the parties filed a plea agreement, and on October 28, 2013, Defendant pled guilty to one count of violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 3147(1). (Docket #15 and #17). On November 26, 2013, Judge Randa sentenced Defendant to ninety-six (96) months of imprisonment and, upon release, a total term of four (4) years of supervised release. (Docket #22).

Defendant was healthy when he was sentenced. However, in August 2014 while incarcerated at a Federal Correctional Institution ("FCI") in Manchester, Defendant began to experience abdominal and rectal pain, as well as constipation. (Docket #53 at 3). Although Defendant sought medical help at the prison, he was told that he only had hemorrhoids. Over the next several months as Defendant's pain grew worse, he began to experience nausea and vomiting and he saw blood in his stool. (*Id.*) Defendant continued to seek medical help, but was always told that he had hemorrhoids. (*Id.* at 3–4). In January of 2015, Defendant was transferred to Petersburg FCI. (*Id.* at 4). While at a transfer center, Defendant began to bleed from his rectum. Although a guard who saw the blood told Defendant that he would go to the hospital, Defendant bled through the night and was finally taken to the hospital the next day. (*Id.*)

After staying at a hospital in Atlanta for a week, Defendant arrived at Petersburg FCI in early February 2015. (*Id.*) Defendant immediately went

to the prison medical staff for help, but they told Defendant that they did not have any paperwork indicating he was sick and so couldn't do anything for him. (*Id.*) On February 23, 2015, Defendant's rectum would not stop bleeding, and he was taken to the emergency room at the John Randolph Medical Center. (*Id.* at 5). Defendant was placed in the intensive care unit and underwent several blood transfusions and aggressive therapy, but the treatment did not help. (*Id.*) An urgent CT scan showed "a tremendous fecal impaction." (*Id.*) A fecal impaction is "a large, hard mass of stool that becomes so lodged in a colon or rectum that it can't be pushed out" and can cause grave illness or death if not treated. (*Id.*) Defendant was diagnosed with "severe candida esophagitis," an infection that develops when the body's immune system is weak. (*Id.* at 5–6). Additionally, Defendant was diagnosed with "severe ulcerative colitis."(*Id.*)

When Defendant's health did not improve by March 10, 2015, his treating physician became very concerned and recommended a total colectomy, a procedure to remove the entire colon, and an ileostomy, a procedure to attach a colostomy bag in his abdomen to remove waste. (*Id.* at 6–8). Defendant's doctor told him that the procedures were high risk and had complications including "bleeding, infection, organ failure, including even death" and that because of the ileostomy Defendant would possibly have to wear a colostomy bag throughout his life. (*Id.* at 7). Defendant wanted relief from the pain and agreed to have the procedures performed. (*Id.* at 7). After the surgery, Defendant still had abdominal pain and fever. (*Id*. at 8). Defendant was discharged after staying a month and a half at the hospital. (*Id.*)

Unfortunately, Defendant continued to have rectal bleeding and pain from 2015 through 2019. (*Id.*) In 2015, Defendant had a flexible

Page 3 of 12
Case 2:13-cr-00101-JPS   Filed 08/03/20   Page 3 of 12   Document 56

endoscopy with argon plasma coagulation ("APC") ablation treatment to address his rectal bleeding. (*Id.*) However, his bleeding continued. In June 2016, Defendant underwent laser therapy treatment, which helped reduce the bleeding but did not stop it. (*Id.* at 9). Defendant had another APC ablation treatment in June 2018. (*Id.* at 10). In July 2018, Defendant had a flexible sigmoidoscopy, during which the doctors noticed abnormalities and treated Defendant with another APC ablation treatment. (*Id.*)

In November 2018, Defendant met with a Bureau of Prisons ("BOP") physician to discuss a colostomy reversal procedure. (*Id.* at 11). On September 17, 2019, Defendant had the reversal procedure, called a "J-pouch" surgery, and was hospitalized for ten days to recover. (*Id.*) Defendant remained in significant pain after his surgery, and he had trouble getting sufficient nourishment due to vomiting. (*Id.*) Defendant had an additional procedure on November 6, 2019, and it was determined that he would need further follow-up to complete the J-pouch. (*Id.* at 11–12). Defendant had a follow-up procedure in February 2020. (*Id.* at 12). Defendant was supposed to meet with his surgeon within three months thereafter, but due to COVID-19 restrictions in the prison, his appointment was never scheduled. (*Id.*)

On March 29, 2020, Defendant petitioned the warden at Englewood FCI for compassionate release. On March 31, 2020, the warden denied his request. (*Id.*) Defendant's underlying health issues put him at high risk for severe illness from COVID-19.[1] Defendant's medications for his underlying

---

[1] Center for Disease Control and Prevention, *Immunocompromised state (weakened immune system) from blood, bone marrow, or organ transplant; HIV; use of corticosteroids; or use of other immune weakening medicines*, (July 30, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#immunocompromised-state.

conditions include an immunosuppressant and corticosteroid. Immunosuppressant medications can increase the risk of infection, and corticosteroids are associated with severe COVID-19 illness among inflammatory bowel disease patients.[2] (*Id.* at 12–13). Defendant is unable to follow the CDC's guidelines regarding social distancing and hygiene due to his incarceration. (*Id.* at 13–14).

Defendant is scheduled to be released from incarceration in only a few months, in October 2020. (Docket #53 at 2). Upon release from imprisonment, Defendant plans to live with his cousin in Milwaukee. Defendant's cousin has agreed to drive Defendant to medical and probation appointments, and to help him apply for food stamps and Medicaid. (*Id.* at 22).

3.  **LEGAL STANDARD**

Motions for "compassionate release" are authorized by 18 U.S.C. § 3582(c)(1), which provides, in pertinent part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or

---

[2]*See* Erica Brenner, et. al, *Corticosteroids, but not TNF antagonists, are associated with Adverse COVID-19 outcomes in patients with Inflammatory Bowel Diseases: Results from Internal Registry*, Gastroenterology, 1-2, 4, 6, 8, (May 18, 2020) available at https://doi.org/10.1053/j.gastro.2020.05.032.

supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

>> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c).[3] The statute does not define the term "extraordinary and compelling reasons." Rather, Congress provided that:

> The [Sentencing] Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t). The Commission's policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction . . .

---

[3]The statute also allows the release of certain elderly inmates, but that provision is not at issue here, the Court will not discuss it further.

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The commentary to the policy statement provides that extraordinary and compelling reasons exist under these circumstances:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

### 4. ANALYSIS

Under 18 U.S.C. § 3582(c)(1)(A), there are several elements that must be met before a Court may modify a term of imprisonment. First, the defendant must exhaust his or her administrative remedies. Second, the Court must find that "extraordinary and compelling reasons warrant such a reduction." Third, the Court must consider the sentencing factors in 18 U.S.C. § 3553(a).

As to the first element, it is undisputed that on March 31, 2020, the Defendant exhausted his administrative remedies. (Docket #53 at 12). The Court agrees.

The second element requires the Court to find "extraordinary and compelling reasons" that warrant the reduction in sentence. Defendant's circumstances—particularly the outbreak of COVID-19 and his underlying medical conditions that place him at a high risk should he contract the disease—present "extraordinary and compelling reasons" to reduce his sentence under subdivisions (A) through (D) of U.S.S.G. § 1B1.13 cmt. n.1. Further, the Government agrees with Defendant and joined the undisputed motion for compassionate release.

Defendant has shown extraordinary and compelling reasons to reduce his sentence. First, he suffers from underlying health conditions that render him especially vulnerable to COVID-19 and may be fatal.[4] Second, prison is a particularly dangerous place for Defendant at this moment. Prisons are difficult places, even with the measures being taken by the BOP, in which to prevent the spread of the virus and adequately quarantine prisoners. In fact, COVID-19 has infected some inmates in the prison where Defendant is incarcerated. Third, he has served almost all of his sentence. None of these reasons alone is extraordinary and compelling. Taken together, however, they constitute reasons for reducing his sentence.

Lastly, the Court must "consider[] the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). These factors include the "nature and circumstances of the offense," the "history and characteristics of the defendant," the "need for the sentence imposed," "the kinds of sentences available," the types of sentences that other offenders receive for similar conduct, and any pertinent policy statement. 18 U.S.C. § 3553(a). Section 3142(g) sets out the factors that courts should consider when deciding whether to release a person into the community. They include "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family

---

[4] Other courts have found that when a prisoner is immunocompromised or is taking immunosuppressing medication, those conditions are an "extraordinary and compelling reason" for compassionate release. *See United States v. Handy*, 3:10-cr-00128-RNC-8, 2020 WL 2487371 (D. Conn. May 14, 2020); *United States v. Peters*, 3:18-cr-00188-VAB-1, 2020 WL 2092617 (D. Conn. May 1, 2020); *United States v. Brown*, 4:05-cr-00227-RP-CFB-1, 2020 WL 2091802 (S.D. Iowa Apr. 29, 2020); *United States v. Robinson*, 3:18-cr-00597-RS-1, 2020 WL 1982872 (N.D. Cal. Apr. 27, 2020); *United States v. Campagna*, 16 Cr. 78-01 (LGS), 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020).

ties, ... community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

Defendant is incarcerated for a non-violent offense. Although he has a criminal history, the longest he spent incarcerated before his current sentence was three days. (Docket #53 at 20). Defendant has been incarcerated for seven years, and only has a few months left to his incarceration. There is no compelling reason to keep him incarcerated to protect the public at this point in his sentence, especially at the risk to his health. Further, Defendant participated in a substance abuse rehabilitation program, vocational programs, ESL courses, a GED preparation course, parenting classes, a victim impact course, a "managing parole" course, and a cognitive intervention program. (*Id.* at 21). Defendant has a stable and supportive family to help him after his release. Additionally, Defendant has a release plan to live with his cousin in Milwaukee and actions he will take to reacclimate into the community after being released. (*Id.* at 22).

Thus, considering the sentencing factors discussed above, in light of Defendant's poor health, supportive home environment, time served, education in prison, and the fact that he will begin a term of supervised release immediately upon his release from prison, the Court finds that early release is appropriate. For these reasons, the Court holds that the applicable sentencing factors weigh in favor of a sentence reduction for Defendant.

5. **CONCLUSION**

Defendant has almost reached the end of his term of imprisonment. The last few months of his imprisonment should not be a threat to his life

due to the COVID-19 pandemic. For the reasons stated above, this Court will grant Defendant's unopposed motion for compassionate release.

Accordingly,

**IT IS ORDERED** that Defendant Eriberto Gonzalez's unopposed motion for compassionate release (Docket #53) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Eriberto Gonzalez's term of imprisonment be and the same is hereby reduced to "time served";

**IT IS FURTHER ORDERED** that this Order is **STAYED** for up to fourteen (14) days, for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. Defendant Eriberto Gonzalez shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for Defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen (14) days are needed to make appropriate travel arrangements and ensure Defendant's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended;

**IT IS FURTHER ORDERED** that the Bureau of Prisons take all steps necessary to release Defendant Eriberto Gonzalez from incarceration in accordance with this Order and pursuant to the amended judgment, which follows;

**IT IS FURTHERED ORDERED** that Defendant's first motion for compassionate release (Docket #47) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHERED ORDERED** that Defendant's motion for an extension of time to file a supplemental brief (Docket #52) be and the same is hereby **DENIED as moot**.

Dated at Milwaukee, Wisconsin, this 3rd day of August, 2020.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge